Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| VANESSA LUGO OBJIO<br><br>PETICIONARIA<br><br>v.<br><br>EX PARTE | TA2025CE00331 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm. PO2023RF00834<br><br>Sobre: Declaración Incapacidad y Nombramiento de Tutor |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 7 de octubre de 2025.

### I.

El 21 de agosto de 2025, la señora Celenia Objio Lara (señora Objio Lara o peticionaria) presentó digitalmente ante este foro apelativo un recurso de *Certiorari* en el que nos solicitó que revoquemos la *Resolución y Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario), el 21 de julio de 2025, notificada y archivada digitalmente en autos el 22 de julio de 2025.[1] Por medio del referido dictamen, el TPI autorizó a Vanessa Lugo Objio (señora Lugo Objio o recurrida) a obtener de forma directa los expedientes médicos certificados e información de la condición de salud actual de su madre, cuyo apoderado es el señor Manuel Antonio Lugo Objio (señor Lugo Objio), hijo de la peticionaria y hermano de la recurrida. El 11 de agosto de 2025, el

---

[1] Véase, Entrada Núm. 291 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

foro primario declaró No Ha Lugar las mociones posteriores, en desacuerdo a lo resuelto por el TPI, presentadas por la Oficina de la Procuradora de las Personas de Edad Avanzada (OPPEA), el señor Lugo Objio y la Procuraduría de Asuntos de Familia de Ponce.[2] Por consiguiente, mantuvo la *Resolución y Orden* recurrida.

El 26 de agosto de 2025, este foro apelativo intermedio otorgó a las partes recurridas hasta el 4 de septiembre de 2025 para expresarse sobre los méritos del recurso.[3]

El 29 de agosto de 2025, la señora Objio Lara presentó su *Moción en solicitud de paralización de procedimientos y suspensión de vista.*[4] Arguyó que las órdenes emitidas en la *Resolución y Orden* del foro primario someten a la adulta mayor a una verificación médica exhaustiva que interfiere con su autodeterminación y derechos fundamentales, por lo que solicitó que se paralizaran los procesos ante el TPI y que se dejara sin efecto una vista señalada el 10 de septiembre de 2025.

El 3 de septiembre de 2025, la Procuradora de Asuntos de Familia, representada por la Oficina del Procurador General de Puerto Rico, solicitó autorización y prórroga para comparecer en este caso.[5]

El 4 de septiembre de 2025, la señora Lugo Objio también suplicó término adicional para presentar su oposición.[6]

El 5 de septiembre de 2025, emitimos una *Resolución* en la que otorgamos a las partes hasta el 19 de septiembre de 2025 como término improrrogable para su comparecencia. También, declaramos Ha Lugar la *Moción en solicitud de paralización de*

---

[2] Íd., Entradas Núm. 316, 319 y 320 del SUMAC-TPI.
[3] Véase, Entrada Núm. 3 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[4] Íd., Entrada Núm. 4 del SUMAC-TA.
[5] Íd., Entrada Núm. 6 del SUMAC-TA.
[6] Íd., Entrada Núm. 7 del SUMAC-TA.

*procedimientos y suspensión de vista.* Por lo cual, ordenamos la paralización de los procesos ante el TPI.[7]

El 19 de septiembre de 2025, la Procuradora de Asuntos de Familia presentó un *Escrito en cumplimiento de Resolución* en la que expuso su postura con relación a la expedición del recurso.[8]

En la misma fecha, la señora Lugo Objio presentó una *Oposición a la expedición de certiorari* en la que solicitó que nos abstengamos de intervenir con la determinación del foro primario.[9]

Con el beneficio de la comparecencia de las partes, pormenorizamos los hechos procesales más relevantes para la atención del recurso.

**II.**

El caso de autos tuvo su génesis el 13 de septiembre de 2023, cuando la señora Lugo Objio, adulta mayor, presentó ante el TPI una petición sobre declaración de incapacidad y nombramiento de tutor en beneficio de la señora Objio Lara, madre de cuatro hijos, incluyendo a la recurrida.[10] La señora Lugo Objio solicitó su nombramiento como tutora legal para encargarse de la administración de los activos y persona de su madre. Adujo que dos de sus hermanos están de acuerdo con este nombramiento.[11] Indicó que el tercer hermano, el señor Lugo Objio, tiene un poder general como administrador de los bienes de la adulta mayor. Alegó que dicho poder le faculta al cobro de alquileres por rentas de propiedades que pertenecen a su madre.[12] Entre otras alegaciones, indicó que el señor Lugo Objio estaba ejerciendo coerción para alejar a la adulta mayor del resto de los hermanos y que no los tenía al

---

[7] Íd., Entrada Núm. 8 del SUMAC-TA.
[8] Íd., Entrada Núm. 9 del SUMAC-TA.
[9] Íd., Entrada Núm. 10 del SUMAC-TA.
[10] Entrada Núm. 1 del SUMAC-TPI.
[11] Íd., *Petición*, pág. 6, alegación número 26.
[12] Íd., pág. 4, alegaciones 16 y 17. La parte peticionaria reseñó un alquiler localizado en una urbanización que devenga $500.00 (sin mencionar término) y otro alquiler comercial valorado en $6,000.00 mensuales.

tanto del alegado diagnóstico de Alzheimer de su madre, que al momento de la presentación de la petición tenía 89 años de edad.[13] También señaló que el señor Lugo Objio depende de los ingresos de su madre y que la adulta mayor no está recibiendo los cuidados que requiere para su salud física, mental y emocional.[14]

El 25 de septiembre de 2023, el Procurador de Asuntos de Familia, presentó su moción sobre *Informe Fiscal.* En ella, el ministerio público solicitó al foro primario que se ordenara a la parte peticionaria la entrega de documentos relacionados con la presunta incapaz y sus familiares y/o personas con derecho a ser tutor, para la evaluación del caso.[15]

El 2 de octubre de 2023, mediante *Orden,* el foro primario autorizó la intervención del Procurador de Asuntos de Familia.[16]

El 12 de octubre de 2023, se celebró una videoconferencia. Allí, se aceptó la representación legal de Objio Lara. Se instruyó a los alguaciles a realizar el emplazamiento de la adulta mayor. La vista se tornó en una sobre el estado de los procedimientos y, mediante *Minuta,* el foro recurrido concedió término a la representación legal de la señora Vanessa Lugo Objio para proveer la documentación solicitada por el ministerio público y a la representación legal de su mamá para presentar su alegación responsiva.[17]

El 1 de noviembre de 2023, la representación legal de la señora Celenia Objio Lara presentó su *Moción asumiendo representación legal sin someterse a la jurisdicción.*[18] Solicitó la desestimación de la acción de incapacidad. Entre otras cosas,

---

[13] Íd., págs. 5-6, alegaciones 23 y 27.
[14] Íd., pág. 3, alegaciones 4 y 12. En la *Petición*, el señor Lugo Objio y la adulta mayor aparecen registrados en la misma dirección. En su alegación número 12, la parte peticionaria indicó que [...] Hace poco Manuel comenzó un internado y deja sola a la Sra. Celenia Objio Lara [...].
[15] Entrada Núm. 9 del SUMAC-TPI.
[16] Entrada Núm. 10 del SUMAC-TPI.
[17] Entrada Núm. 17 del SUMAC-TPI.
[18] Entrada Núm. 26 del SUMAC-TPI.

catalogó de "acto revanchista" la acción incoada por la peticionaria al no haberse decidido a su favor una reclamación previa (JAPEA2022-0117).[19] Subrayó que los anejos y alegaciones de la peticionaria no sostienen que la señora Objo Lara esté impedida de administrar su persona y sus bienes.

El 1 de diciembre de 2023, la recurrida presentó una *Moción informativa y en solicitud de remedios.*[20] En ella, la señora Lugo Objio mencionó que se sometió un Informe de Activos y Pasivos de la adulta mayor. Indicó que la relevancia del informe estriba en que la señora Objio Lara nació en República Dominicana, tiene participación en los bienes de su difunto esposo y la sucesión que comprende a los hijos de este último. También alegó que la adulta mayor pudo haber sido trasladada a República Dominicana por su hijo, el señor Lugo Objio, para poder retirar dinero o hacer transacciones relacionadas con los bienes de la señora Objio Lara sitos en ese país. Adujo no estar segura si la ausencia de la adulta mayor a la vista pautada para el 27 de noviembre de 2023 se debió a su traslado o trámite relacionado al vecino país. Por esta razón, suplicó al foro primario que ordenara a la adulta mayor a informar al respecto.

El 5 de diciembre de 2023, la señora Objio Lara se opuso a la moción presentada por la recurrida.[21] Insistió en que se encuentra capacitada para administrar sus bienes. Subrayó que el foro recurrido carece de jurisdicción para emitir orden sobre los bienes sitos fuera de Puerto Rico y desglosados por la recurrida.

El 23 de enero de 2024, las partes comparecieron a una vista de forma remota. En la *Minuta*[22], el foro primario declaró No Ha

---

[19] Entrada Núm. 1 del SUMAC-TA. Apéndice de la *Demanda*, Anejos, Exhibit 11(A) y Exhibit 11 (B). Informe OPPEA 2023 del caso JAPEA2022-0117.
[20] Entrada Núm. 34 del SUMAC-TPI.
[21] Entrada Núm. 36 del SUMAC-TPI.
[22] Entrada Núm. 52 del SUMAC-TPI. *Minuta* notificada y archivada en autos el 25 de enero de 2024. El epígrafe en la *Minuta* indica las partes *Marelyn Borrero*

Lugar la solicitud de desestimación presentada por la señora Objio Lara. Además, citó a las partes a una vista de órdenes protectoras ante planteamientos realizados por las partes sobre preocupaciones de la alegada influencia del señor Lugo Objio sobre su madre y presunta incapacidad de la adulta mayor.

El 25 de enero de 2024, la señora Objio Lara solicitó la paralización de los procesos.[23] Adjuntó la Orden de Protección JAPEA2023-0232, solicitada por el señor Lugo Objio en representación de la adulta mayor y en contra de su hija, la señora Lugo Objio.

El 31 de enero de 2024, mediante *Resolución*[24], el foro primario resolvió No Ha Lugar la solicitud de paralización de la señora Objio Lara.

Posteriormente, el 26 de febrero de 2025, la señora Objio Lara presentó una *Moción solicitando desestimación.*[25] Sostuvo que no puede ser declarada incapaz en contra de su voluntad. También adujo que profesionales de la salud la han entrevistado y la han encontrado en buen estado. También, puntualizó la existencia del Poder otorgado por ella y que se presume válido ante la ley, por lo que el proceso de impugnación de ese instrumento notarial es distinto al proceso de una declaración de incapacidad.

Por su parte, el 25 de marzo de 2025, la recurrida presentó su *Dúplica a "Réplica a oposición a mociones de desestimación y solicitud de medidas cautelares conforme a derecho".*[26] Puntualizó que la existencia de un poder notarial no protege de explotación, negligencia o abandono de la adulta mayor. Destacó una minuta del caso previo relacionado con identificador alfanumérico

---

*Quiñones vs. Ex Parte* en el caso civil número PO2023RF00834, que es el epígrafe de el caso ante nos. El relato en la *Minuta* trata sobre las partes en este caso.

[23] Entrada Núm. 48 del SUMAC-TPI.

[24] Entrada Núm. 58 del SUMAC-TPI. Notificada y archivada en autos el 1 de febrero de 2024.

[25] Entrada Núm. 213 del SUMAC-TPI.

[26] Entrada Núm. 235 del SUMAC-TPI.

PO2022RF00780, en donde se cuestionó la validez del Poder otorgado por la adulta mayor. Por lo cual, entre otras cosas, suplicó que se denegara la desestimación y se evaluara judicialmente las funciones del apoderado de la adulta mayor.

Luego de varias vistas y varios trámites procesales, y en lo pertinente a este caso, el 21 de julio de 2025, el foro primario emitió y notificó la *Resolución y Orden* recurrida.[27] El foro primario emitió la siguiente:

### II. DETERMINACION[ES] DE HECHOS

Tomamos como ciertos todos los hechos bien alegados de la demanda. Esto significa que, se toman como cierto solo los hechos alegados correctamente, sin incluir las alegaciones concluyentes, conclusiones de derecho y los hechos alegados de forma generalizada que reciten de forma trillada los elementos de la causa de acción y las conclusiones de derecho. Además, estos hechos los interpretamos de la forma más favorable para la Demandante.

En lo pertinente a este recurso, dispuso lo siguiente en torno a la *Moción de desestimación* presentada por la señora Objio Lara:

2. **"MOCIÓN SOLICITANDO DESESTIMACIÓN"** presentada el 23 [26] de febrero de 2025, por la parte Peticionada, Sra. Objío Lara *(entrada 213)*:

a. **NO HA LUGAR** en cuanto a la petición de desestimación de la solicitud de declaración de incapacidad y designación de tutor.
b. **HA LUGAR** en cuanto a la petición de desestimación de la solicitud de que se deje sin efecto el poder duradero, por ende, se desestima sin perjuicio.

También, el foro primario ordenó las siguientes medidas cautelares en cuanto a la adulta mayor:

1. Se ordena a la Peticionaria coordinar una **evolución [sic] física con los correspondientes laboratorios incluyendo el de Cannabis**, con un profesional médico geriátrico dentro del término de diez (10) días. Una vez coordinada, se le concede el término de diez (10) días para que informe mediante Moción, el nombre del profesional médico que evaluará a la adulta mayor, la hora y la fecha en que se realizará la evaluación.

2. Se Ordena a la parte Peticionaria que en el término de diez (10) días informe el nombre del especialista médico que evaluará **el estado mental y condiciones médicas mentales** si alguna de la adulta mayor, Sra. Objío Lara.

---

[27] Entrada Núm. 291 del SUMAC-TPI. Notificada y archivada en autos el 22 de julio de 2025.

> Una vez sea informado el Tribunal emitirá las órdenes correspondientes.
>
> 3. Se ordena al <u>Ministerio Público</u>, que proceda a realizar y presentar el correspondiente Informe Fiscal, en el presente caso, en el término de veinte (20) días, incluyendo la evaluación de la nueva evidencia documental obtenida en el caso de epígrafe. Se ordena a su vez, a la <u>Peticionaria</u>, que proceda a la entrega de toda documentación que le sea necesaria al Ministerio Público para realizar el correspondiente informe.
>
> 4. Se ordena a la parte <u>Peticionaria</u> que en el término de diez (10) días presente la correspondiente orden para obtener los expedientes médicos de la Sra. Objío Lara concernientes al presente caso. La parte Peticionaria tiene que presentar la solicitud de las [ó]rdenes mediante moción, para ser evaluadas por el Tribunal.
>
> 5. Se ordena <u>la intervención y comparecencia del Departamento de la Familia</u> a los efectos de que realice la correspondiente evaluación de los asuntos presentados y emita informe al respecto dentro del término de veinte (20) días.

(Mayúsculas, negrillas y subrayado en el original).

El 22 de julio de 2025, la OPPEA presentó su *Moción de reconsideración parcial a resolución y orden*.[28] En síntesis, insistió en que la adulta mayor tiene derecho a escoger a sus médicos y el tratamiento médico a seguir, según dispone la Ley 121-2019. Solicitó también tiempo adicional para suplementar su moción.

El 22 de julio de 2025, se celebró una videoconferencia para la discusión del estado de los procedimientos. En su *Minuta*[29]*,* el tribunal puntualizó que estaría resolviendo las mociones de reconsideración una vez que todos tuvieran la oportunidad de expresarse. Entre otras cosas, señaló una vista para el 10 de septiembre de 2025.

El 11 de agosto de 2025, el foro recurrido emitió una *Orden Autorizando Solicitud de Expedientes Médicos y Otras*.[30] Autorizó a la señora Lugo Objio a obtener de forma directa los expedientes

---

[28] Entrada Núm. 292 del SUMAC-TPI. También, véase Entrada Núm. 304 del SUMAC-TPI, *Moción de reconsideración parcial enmendada y en cumplimiento con las [ó]rdenes contenidas en las entradas 299, 300, 301, y 302*, presentada por la OPPEA el 1 de agosto de 2025.

[29] Entrada Núm. 294 del SUMAC-TPI.

[30] Entrada Núm. 314 del SUMAC-TPI. Notificada y archivada digitalmente en autos el 12 de agosto de 2025.

médicos certificados de la adulta mayor que figuran en la decisión. Por otro lado, ordenó al señor Lugo Objio a presentar un informe por escrito que identifique a los médicos que han atendido a su madre en los últimos tres (3) años.

Ese mismo día, el foro primario, mediante *Resolución*,[31] declaró Ha lugar la *Moción en oposición a la moción de reconsideración parcial enmendada de la OPPEA*, presentada por la señora Lugo Objio. También, el foro recurrido emitió resoluciones adicionales en donde declaró No Ha Lugar las mociones posteriores presentadas por la OPPEA, el señor Lugo Objio y el Ministerio Público.[32] Por consiguiente, mantuvo la *Resolución y Orden* recurrida.

Inconforme con el referido dictamen, el 21 de agosto de 2025, acude ante este foro la adulta mayor, señora Objio Lara, y formuló el siguiente señalamiento de error:

> **PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, AL EMITIR ÓRDENES PARA QUE LA PARTE PETICIONARIA, CELENIA OBJIO LARA, SE SOMETA A EXÁMENES FÍSICOS Y MENTALES EN CLARA VIOLACIÓN A SU DERECHO CONSTITUCIONAL A LA INTIMIDAD Y DIGNIDAD Y EN CONTRAVENCIÓN A LAS REGLAS DE PROCEDIMIENTO CIVIL, ASÍ COMO A LOS ARTÍCULOS DEL CÓDIGO CIVIL DE 2020 EN TORNO A LA PRESUNCIÓN DE CAPACIDAD.**

La señora Objio Lara arguyó que la señora Lugo Objio insiste en solicitar nuevas evaluaciones físicas y mentales sobre su persona aun cuando no se han identificado elementos que justifiquen su incapacitación. Alegó que el hecho de obligarla a someterse a evaluaciones médicas constituye una renuncia forzada a privilegios legales que le son reconocidos en nuestro ordenamiento jurídico. Sostuvo, además, que la actuación del foro primario representa un menoscabo innecesario de los derechos constitucionales de la

---

[31] Entrada Núm. 315 del SUMAC-TPI. Notificada y archivada en autos el 12 de agosto de 2025.
[32] Véase, Entradas Núm. 316, 319 y 320 del SUMAC-TPI.

peticionaria sin que se haya probado su incapacidad e ignora la postura del Ministerio Público y la OPPEA. Asimismo, adujo que la orden recurrida violenta las exigencias de las Reglas de Procedimiento Civil, 31 LPRA Ap. V, y los derechos reconocidos en la Carta de Derechos de los Adultos Mayores.

El 19 de septiembre de 2025, la Procuradora de Asuntos de Familia presentó su *Escrito en cumplimiento de Resolución* en el que sostuvo que la evaluación médica de la peticionaria ordenada por el TPI, en contra de su voluntad, es contraria a derecho. Arguyó que, dada la existencia del poder duradero otorgado por la peticionaria y sobre el cual no se ha declarado su invalidez, procede respetar la voluntad de la señora Objio Lara, según allí consignada. En esa misma línea, argumentó que coartar a una persona de su derecho a tomar decisiones sobre recibir o no tratamiento médico lesiona su derecho a la intimidad reconocido en nuestro ordenamiento jurídico. Por lo cual, solicitó que se expida el recurso de *certiorari* y se deje sin efecto la *Resolución y orden* emitida por el foro primario en lo que respecta a las evaluaciones médicas y análisis de laboratorio sobre la peticionaria.

En la misma fecha, la peticionada presentó una *Oposición a la expedición de certiorari.* Por su parte, adujo que la orden emitida por el TPI es necesaria para establecer las condiciones médicas, mentales y cognoscitivas de la señora Objio Lara dado a que la recurrida y sus hermanos no han podido tener acceso a su información. La señora Lugo Objio arguyó que la orden recurrida no violenta los derechos de la adulta mayor, sino que intenta que ésta última sea evaluada para determinar su capacidad y se le proteja de las personas que pudieran interferir con sus mejores intereses ya sean físicos, emocionales y económicos. Por ello, solicitó que se ordene la continuación de los procedimientos en el foro primario.

En adelante, pormenorizaremos el derecho aplicable a la controversia del recurso de epígrafe.

### III.

### A.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R.52.1,[33] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp. et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.***, 201 DPR 703 (2019).

---

[33] Esta Regla dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Si el auto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo análisis. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, ***In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[34]

**B.**

La *Carta de Derechos y la Política Pública del Gobierno a favor de los Adultos Mayores*, Ley Núm. 121 del 1 de agosto de 2019 (Ley Núm. 121-2019), según enmendada, 8 LPRA secs. 1511 *et seq.*, "reconoce la responsabilidad del Estado de mejorar las condiciones de vida de la población de adultos mayores y, además, garantizar el bienestar de éstos", y "de proveer, hasta donde sus medios, recursos y situación fiscal lo hagan factible, las condiciones adecuadas que promuevan en los adultos mayores el goce de una vida plena y el

---

[34] Esta Regla dispone lo siguiente:
El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

disfrute de sus derechos naturales, humanos y legales". Artículo 2 de la Ley Núm. 121-2019, *supra*, sec. 1512. Del mismo modo, a través de esta Ley, "se refuerza la responsabilidad del Estado en preservar la integridad física y emocional de los adultos mayores, a los fines de fortalecer y hacer cumplir la política pública dirigida hacia esta población, mediante los preceptos establecidos en esta Ley". *Íd.*

Cónsono con lo anterior, el Estado les reconoce derechos a los adultos mayores, independientemente de aquellos señalados en otros ordenamientos legales, incluyendo:

> **A.** *Generales, integridad, dignidad y preferencia:*
>
> . . . .
>
> **i. Que se le garanticen todos los derechos, beneficios, responsabilidades y privilegios otorgados por la Constitución de Puerto Rico y de Estados Unidos de América, así como de las leyes y reglamentos federales y estatales.**
>
> **ii.** Estar libre de interferencia, coacción, discrimen o represalia para o al ejercer sus derechos civiles.
>
> **iii.** Recibir atención médica en su fase preventiva, clínica y de rehabilitación para la protección de su salud y su bienestar general.
>
> . . . .
>
> **viii.** Escoger con qué pariente o parientes desea convivir o el lugar donde desea hacerlo en un ambiente de amor, comprensión y sosiego.
>
> . . . .
>
> **xi.** Disfrutar de un ambiente de tranquilidad y solaz.
>
> **xii.** Recibir protección y seguridad física y social contra abusos físicos, emocionales o presiones psicológicas por parte de cualquier persona.
> . . . .
>
> **xvii. Gozar de confidencialidad en la información contenida en sus expedientes clínicos, la cual no podrá ser divulgada sin su consentimiento escrito.**
>
> **xviii. Inspeccionar todo expediente clínico que esté bajo la custodia de personas que le presten servicios médicos o de otra índole.**
>
> . . . .
>
> **xxi.** A una vida de calidad, libre y sin violencia o maltrato físico o mental, con la finalidad de asegurarle respeto a su integridad física, psicoemocional y sexual.

**xxii.** A la protección contra toda modalidad de abandono, explotación, de aislamiento y de marginación.

**xxiii.** A recibir protección por parte de la familia y la sociedad, así como de las instituciones estatales y municipales.

**xxiv.** Vivir libre de presiones, coacciones y manipulaciones por parte de familiares, personas particulares, empresas privadas o del Estado, con el propósito de explotación financiera o que estén dirigidas a menoscabar su capacidad y su derecho a la autodeterminación.

**xxv.** Vivir en un ambiente de tranquilidad, respeto y dignidad que satisfaga las necesidades básicas de vivienda, de alimentación, de salud y económicas, con atención a sus condiciones físicas, mentales, sociales, espirituales y emocionales.

**xxvi.** A vivir en entornos seguros, dignos y protectores, que cumplan con sus necesidades y requerimientos y en donde ejerzan libremente sus derechos.

**B.** *Salud, alimentación y familia:*

. . . .

**iv.** A recibir una atención médica integral con calidad a través de acciones de prevención, diagnóstico, tratamiento y rehabilitación.

**v. A disponer de información amplia sobre su estado de salud y participar en las decisiones sobre el tratamiento de sus enfermedades, excepto en casos en que sean judicialmente declarados incapaces.**

. . . .

**F.** *Principios jurídicos:*

**iii.** A contar con asesoría gratuita por parte de las instituciones del Estado, así como con un representante legal, según proceda, cuando sea necesario; especialmente en la protección de su patrimonio personal y familiar.

**iv. Decidir, con capacidad de ejercicio, sobre la tutela de su persona y sus bienes.**

Artículo 4 de la Ley Núm. 121-2019, *supra*, sec. 1514. (Énfasis suplido).

Tal como se desprende del Artículo 7 de la Ley Núm. 121-2019, *supra*, sec. 1517, el Departamento de la Familia tiene el deber de tomar aquellas medidas de prevención y supervisión con el propósito de que la familia participe en la atención de los adultos mayores en una situación de riesgo o desamparo, en acuerdo de actuación con las dependencias gubernamentales. También ostenta la facultad para intervenir en todas las situaciones de maltrato

donde se le refiera una situación de maltrato contra un adulto mayor; y será responsable de la prevención, identificación, investigación, supervisión protectora y tratamiento social de todo adulto mayor que sea víctima de maltrato en todas sus modalidades; y es el ente central en el aseguramiento del cumplimiento de la nueva legislación con el apoyo y cooperación de las agencias e instrumentalidades del Estado. Artículos 7-8 de la Ley Núm. 121-2019, *supra*, secs. 1517 y 1518. Una vez el Departamento de la Familia y la Oficina del Procurador de las Personas de Edad Avanzada advienen en conocimiento o sospecha de que un adulto mayor podría ser víctima de maltrato deberán informarle inmediatamente al Negociado de la Policía de Puerto Rico y colaborar y trabajar en coordinación con esta. Artículo 19 de la Ley Núm. 121-2019, *supra*, sec. 1529.

De igual modo, los familiares de un adulto mayor tienen un deber de cumplir, de forma constante y permanente, con hacerse cargo de cada uno de los adultos mayores que formen parte de la familia, y proporcionarán los elementos necesarios para su atención integral. Entre las responsabilidades que tienen los familiares se encuentran las siguientes:

> b) Fomentar la convivencia familiar cotidiana, donde el adulto mayor participe activamente, y promover al mismo tiempo los valores que incidan en sus necesidades afectivas, de protección y de apoyo.
> . . . .
> d) Evitar que alguno de sus integrantes realice cualquier acto de abandono, desamparo, marginación, discriminación, abuso, explotación, aislamiento, violencia o los que pongan en riesgo su persona, bienes y derechos.
> . . . .
> f) Fomentar su independencia, respetar sus decisiones y mantener su privacidad.
> . . . .
> i) Asegurarse que la familia cumpla con su responsabilidad de procurar que sus miembros adopten pautas de conducta y acciones que favorezcan a lo largo de su vida un desarrollo individual saludable y productivo teniendo presente el envejecimiento.
> . . . .
> p) Cuando así sea necesario, a fin de preservar su salud física, emocional y mejor bienestar, llevar a la persona adulto mayor a sus citas o visitas médicas.

Artículo 6 de la Ley Núm. 121-2019, *supra,* sec. 1516.

En atención a estas funciones y deberes del Departamento de la Familia, es meritorio definir adulto mayor, explotación financiera, maltrato y orden de protección. Un adulto mayor es toda persona que posea sesenta (60) años o más de edad. Artículo 3 (5) de la Ley Núm. 121-2019, *supra,* sec. 1513. Cuando existe un uso impropio de los fondos, la propiedad o de los recursos de los adultos mayores por otras personas, sin limitarse a "fraude, falsas pretensiones, malversaciones de fondos, conspiración, falsificación de documentos, falsificación de expedientes o récords, coerción, transferencia de propiedad, o negación de acceso a bienes" ello constituye explotación financiera. Artículo 3 (20) de la Ley Núm. 121-2019, *supra,* sec. 1513.

El maltrato de un adulto mayor consiste en trato cruel o negligente hacia dicha persona que le cause daño o lo exponga a un riesgo de sufrir daño a su salud, bienestar y sus bienes incluyendo abuso financiero, emocional, apropiación ilegal, fraude, entre otros. Artículo 3 (28) de la Ley Núm. 121-2019, *supra,* sec. 1513. Por su parte, el abuso emocional "es un patrón de conducta o ataque verbal ejercitado para provocar deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a alimentación o descanso adecuado o amenaza. También incluye la conducta de ignorar, humillar o rechazar al adulto mayor". Artículo 3 (2) de la Ley Núm. 121-2019, *supra,* sec. 1513.

**C.**

Es norma conocida que en nuestro sistema judicial existe una presunción de capacidad mental de la persona natural mayor de edad de obrar por sí misma. Artículo 100 del Código Civil de 2020, 31 LPRA sec. 5601; ***González Hernández v. González Hernández***, 181 DPR 746, 759 (2011); ***Rivera y Otros v. Bco. Popular***, 152 DPR

140, 157 (2000). Solo se admite la sentencia de incapacitación absoluta o restricción parcial de capacidad por las causas y la extensión que determina la ley en contra de dicha presunción. Artículo 100 del Código Civil de 2020, *supra*, sec. 5601. Una de las causas de incapacitación absoluta está "la persona que padece una condición física o mental que le imposibilita cuidar de sus propios asuntos o intereses, mientras se encuentra en este estado". Artículo 102 (b) del Código Civil de 2020, *supra*, sec. 5612. No obstante, los actos jurídicos que realizan estas personas:

> [A]ntes de la declaración de incapacidad y aún durante su estado de incapacitación, si actúan en estado lúcido, se presumen válidos respecto de los terceros que desconocen la condición y actúan de buena fe.
>
> En caso de ausencia total de discernimiento, es de aplicación lo dispuesto en este Código para los actos jurídicos en que falta la voluntad.  Artículo 103 del Código Civil de 2020, *supra*, sec. 5613.

Asimismo, constituye causa de incapacitación parcial cuando una persona tiene restringida su capacidad de obrar por sí misma en los asuntos que afectan sus bienes o intereses personales, con una de las limitaciones expresamente establecidas por ley o la sentencia de incapacitación, cuando una persona padece de discapacidad mental moderada y que tiene una vida útil e independiente. Artículo 104 (b) del Código Civil de 2020, *supra*, sec. 5614. Los actos jurídicos realizados por una persona en las circunstancias anteriores:

> [A]ntes de la sentencia que restringe su capacidad de obrar, no pueden ser impugnados por razón de su incapacitación, a menos que se pruebe vicio en la voluntad.
> Los actos posteriores a la citación y el emplazamiento para el proceso de incapacitación son impugnables, si de ellos resulta lesión grave para los intereses que la sentencia coloca bajo tutela. Artículo 105 de Código Civil de 2020, *supra*, sec. 5615.

Según el Artículo 110 de Código Civil de 2020, *supra*, sec. 5631, entre las personas que pueden solicitar la declaración de incapacitación absoluta o parcial de una persona mayor de edad o de un menor emancipado es "cualquier pariente con plena

capacidad de obrar que tenga derecho a sucederle o el defensor judicial que el tribunal designe". Véase, además, ***González Hernández v. González Hernández***, supra, págs. 760-761. Sin embargo, cuando la capacidad de obrar de una persona natural se limita absoluta o parcialmente, procede el nombramiento de un tutor para que le asista en los actos ordinarios de la vida civil y la represente legalmente en las relaciones jurídicas en las que sea parte. Artículo 101 de Código Civil de 2020, *supra*, sec. 5611.

El tribunal puede adoptar provisionalmente aquellas medidas cautelares necesarias para la seguridad de la persona y de los bienes del alegado incapaz, hasta que se dicta sentencia. Artículo 116 de Código Civil de 2020, *supra*, sec. 5641. Previo a dictar sentencia, y de imponer las limitaciones especiales que procedan o de nombrar el tutor, el tribunal debe requerir un informe sobre las condiciones socioeconómicas del alegado incapaz. Este informe estará a cargo de una persona cualificada a pesar de no ser funcionaria del tribunal. Artículo 117 de Código Civil de 2020, *supra*, sec. 5642; véase, además, Artículo 123 de Código Civil de 2020, *supra*, sec. 5662. Posterior a dictar la sentencia, el tribunal puede exigir del tutor que informe de forma periódica sobre la situación del incapaz y del estado de la administración de los bienes tutelados. Artículo 118 de Código Civil del Puerto Rico de 2020, *supra*, sec. 5643.

La tutela es aquella que le "confiere a una persona natural o jurídica la autoridad para representar y asistir a otra que, sin estar sujeta a la patria potestad, tiene restringida la capacidad de obrar por razón de su minoridad o por las causas que declara la ley". Artículo 122 de Código Civil de 2020, *supra*, sec. 5661. El propósito de esta figura es la guarda y representación de una persona incapaz y la administración de sus bienes, o solamente dicha administración, según las limitaciones que determine la sentencia y las exigencias del régimen tutelar al que queda sometida. Además,

sus funciones constituyen un deber, en beneficio del tutelado y bajo la salvaguarda de la autoridad judicial. *Íd*; véase, además, Artículo 124 de Código Civil de 2020, *supra*, sec. 5663; ***González Hernández v. González Hernández***, supra, pág. 759. Cuando el incapaz es mayor de edad, corresponde la tutela en el siguiente orden preferente:

> (a) al cónyuge, siempre que convivan y conserven la relación marital a la fecha de la declaración;
> (b) a cualquiera de los progenitores, si los hijos del incapaz son menores de edad;
> (c) a cualquiera de los hijos;
> (d) a cualquiera de los abuelos;
> (e) a cualquiera de los hermanos;
> (f) a cualquier persona natural idónea, relacionada por lazos afectivos o solidarios con el incapaz, que quiera y pueda asumir responsablemente el cargo; o
> (g) a cualquier persona jurídica dedicada a este ejercicio tutelar.
> La designación se hace de acuerdo al interés óptimo del incapaz. Artículo 134 de Código Civil de 2020, *supra*, sec. 5683.

De concurrir dos o más personas en un mismo orden de prelación para el nombramiento del tutor, el Tribunal debe hacer la designación conforme al interés óptimo del tutelado, a menos que sea conveniente que compartan simultáneamente el cargo. Artículo 135 de Código Civil de 2020, *supra*, sec. 5684. Ahora bien, si el incapaz puede discernir sobre las consecuencias de su propia incapacitación y expresar una opinión de modo coherente y claro, dará su parecer sobre el nombramiento del tutor. En dicho caso, el Tribunal podrá seleccionar a la persona que prefiera el incapaz, "si es idónea para ejercer el cargo y para atender los asuntos colocados bajo tutela, y si conviene al interés óptimo del incapaz". Artículo 136 de Código Civil de 2020, *supra*, sec. 5685.

Podrá ser tutor la persona natural que goza del pleno ejercicio de sus derechos civiles y que no está inhabilitada por alguna de las causas establecidas en el Código Civil de 2020, *supra*. Incluso, podrá ser tutor también la persona jurídica que no tenga como finalidad lucrativa y entre cuyos fines constitutivos figure la

protección de menores e incapaces. Artículo 143 de Código Civil de 2020, *supra*, sec. 5701. Sin embargo, no puede ser tutor:

**(a)** la persona que está privada o suspendida del ejercicio de la patria potestad por resolución judicial;

**(b)** la persona que ha sido privada de una tutela anterior por las causas que dispone la ley o la persona que está sujeta a ella;

**(c)** la persona sentenciada a cualquier pena privativa de libertad, mientras está cumpliendo la sentencia;

**(d)** la persona convicta por delito grave o menos grave que implica depravación moral o que exhibe conducta que hace suponer fundadamente que no desempeñará bien la tutela;

**(e)** la persona que tiene conflicto de interés con el menor o el incapaz, mantiene un pleito o acción sobre el estado civil del menor o el incapaz o sobre la titularidad de sus bienes o le adeuda sumas de consideración;

**(f)** la persona quebrada no rehabilitada, salvo que la tutela sea de la persona;

**(g)** la persona que ha presentado maliciosa e injustificadamente alguna querella contra el menor o acusación criminal contra sus ascendientes o colaterales hasta el cuarto grado;

**(h)** la persona que no reside en Puerto Rico, a menos que al momento del nombramiento tenga al menor o al incapaz en su compañía o se trate de la tutela de bienes ubicados fuera del territorio o que pueden administrarse desde cualquier lugar; y

**(i)** la persona excluida expresamente por los progenitores en testamento o escritura pública, salvo que el tribunal lo estime conveniente, en beneficio del menor o del incapaz. Artículo 144 de Código Civil de 2020, *supra*, sec. 5702.

Dicho tutor entrará en el desempeño de su cargo como tal y realizará válidamente las funciones que le son propias, después de la inscripción del nombramiento en el Registro de Tutelas. Artículo 148 de Código Civil de 2020, *supra*, sec. 5706. Cónsono con ello, las delimitaciones del ejercicio de la tutela están recogido en la Sección Quinta del Capítulo VIII sobre tutela.

**D.**

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico garantiza la inviolabilidad de la dignidad humana y el derecho de toda persona a la protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar. Artículo II, Secs. 1 y 8, **Const. ELA**, LPRA, Tomo 1. El citado derecho a la intimidad de nuestra Constitución es de factura más ancha a la establecida en la Constitución de Estados Unidos de América. *Figueroa Ferrer v. ELA*, 107 DPR 250, 258-260 (1978).

Así, los referidos derechos fundamentales operan *ex propio vigore*, sin necesidad de ley que los implante. ***Figueroa Ferrer v. ELA***, supra, pág. 259.

El derecho a la intimidad goza de la más alta protección bajo nuestra Constitución y constituye un ámbito exento capaz de impedir o limitar la intervención de terceros —sean particulares o poderes públicos— contra la voluntad del titular. ***López Tristani v. Maldonado***, 168 DPR 838, 849 (2006); Véase, ***Castro v. Tiendas Pitusa***, 159 DPR 650 (2003). Esta disposición constitucional impone al Estado una función dual entre abstenerse de actuar en una forma que viole el ámbito de autonomía e intimidad individual y actuar de forma positiva en beneficio del individuo. ***Soc. de Gananciales v. Royal Bank de PR***, 145 DPR 178, 201 (1998). Incluso, el Tribunal Supremo ha resuelto que el derecho a la intimidad se lesiona, entre otras, cuando se limita la facultad de un individuo de tomar decisiones personales, familiares o íntimas. Íd., pág. 202.

Para reconocer el derecho a la intimidad, es necesario que concurran dos elementos: (1) es imperativo que se demuestre que el agraviado tiene una expectativa subjetiva real de que su intimidad se respete, y (2) que la sociedad considera razonable albergar esa expectativa. ***Siaca v. Bahía Beach Resort***, 194 DPR 559, 608 (2016); ***Pueblo v. Santiago Feliciano***, 139 DPR 361, 390 (1995).

**IV.**

En el caso de marras, la adulta mayor y peticionaria, la señora Objio Lara, solicita que revoquemos una *Resolución y Orden* en la que el TPI ordenó una serie de medidas cautelares sobre la adulta mayor. En síntesis, la peticionaria planteó que el foro primario erró al expedir las órdenes para que se someta a exámenes físicos y mentales y, al autorizar a la recurrida a obtener de forma directa su información médica. Arguyó que dicha acción violaría su derecho

constitucional a la dignidad e intimidad y que contraviene disposiciones del Código Civil en torno a la presunción de capacidad. Argumentó, además, que dicha injerencia únicamente sería admisible si, luego de haber agotado alternativas menos intrusivas, existiera evidencia clara y convincente de su condición se encuentra en controversia y que el examen resulta estrictamente necesario.

Por su parte, la señora Lugo Objio nos solicitó que nos abstengamos de expedir el recurso porque alega que la orden recurrida no violenta los derechos de la adulta mayor, sino que pretende que la señora Objio Lara sea evaluada para poder determinar su capacidad y para velar por su mejor interés.

Por otra parte, la Procuraduría de la Familia peticionó la expedición del recurso para que se deje sin efecto la orden recurrida respecto a las medidas cautelares interpuestas sobre la señora Objio Lara, pues planteó que a la adulta mayor, quien ha sido evaluada previamente, se le presume capaz por lo que obligarla a someterse a una evaluación en contra de su voluntad es contrario a los preceptos de la Ley Núm. 121-2019, *supra*. Por tanto, arguyó que no se debe ignorar la voluntad de la peticionaria de epígrafe, quien ha sido la que ha manifestado en reiteradas ocasiones que no está incapacitada y que no quiere ser sometida a evaluaciones médicas. Lo contrario, según razonó, lesiona el derecho a la intimidad respecto a las decisiones para que se intervenga con su cuerpo reconocido en nuestro ordenamiento jurídico. En ese sentido, sostuvo que no puede obligarse a una persona con capacidad para tomar decisiones a someterse a una evaluación médica en contra de su voluntad. La OPPEA argumentó exactamente la misma postura ante el TPI.

Además, el Ministerio Público, aludió a que el Poder Duradero que la peticionaria otorgó, en pleno uso de sus facultades, establece que, en caso de una declaración de incapacidad, el mismo subsistirá

plenamente respecto a lo que en él consignó, a fines relacionados a su mejor bienestar. Asimismo, aludió a que, en una ocasión previa, la señora Objio Lara fue entrevistada por la OPPEA y por la misma Procuraduría en donde ésta expuso su sentir, de forma clara, precisa y con seguridad.

Tras un análisis objetivo, sereno y cuidado del recurso presentado ante nos, en atención a la normativa jurídica aplicable a la expedición del recurso de *certiorari,* determinamos ejercer nuestra facultad revisora con el propósito de conceder una solución justa en derecho, pues concluimos que el TPI cometió el error señalado.

En el caso de marras, la señora Objio Lara no ha sido declarada incapaz. Por ende, se presume su capacidad para tomar plenamente las decisiones relacionadas con su salud tanto física como emocional y sobre su economía.

Al atender una petición sobre incapacidad, el tribunal, en virtud del artículo 114 del Código Civil de 2020, *supra,* sec. 5635, recibirá el dictamen de uno o de varios facultativos médicos, que traten las condiciones físicas, cognoscitivas o emocionales que limitan la capacidad de obrar del alegado incapaz. Es decir, el tribunal podrá evaluar mediante el testimonio de aquellos facultativos médicos la condición del presunto incapaz. Así como también, el Artículo 116 del Código Civil de 2020, *supra,* sec. 5641, permite que el tribunal adopte medidas cautelares necesarias para la seguridad de la persona y bienes del presunto incapaz, previo a que se dicte sentencia. Todo esto, sin necesariamente llegar a la intromisión sobre la persona misma del presunto incapaz en contra de su voluntad. Si bien el tribunal podrá pedir otra prueba que considere necesaria para dilucidar la capacidad de la persona, deberá en todo caso prevalecer la protección constitucional a la dignidad e intimidad del presunto incapaz.

Además, obsérvese que, en este caso, surge del expediente que la peticionaria Objio Lara otorgó un poder duradero a favor de su hijo, el señor Lugo Objio, en el que consignó disposiciones sobre su persona y bienes aun en caso de una declaración de incapacidad. Como fue resuelto por el TPI, una impugnación de dicho poder duradero corresponde atender en una acción independiente.

Somos de la opinión de que la medida cautelar impuesta por el foro primario de ordenar un examen físico y la divulgación de los expedientes médicos de la presunta incapaz no necesariamente le provee la mejor protección hacia su persona pues el tribunal tiene otras alternativas, menos onerosas e intrusivas, para examinar su capacidad. También, recordemos que la Ley Núm. 121-2019, *supra*, tiene como propósito principal propiciar y asegurar que todo adulto mayor en Puerto Rico tenga protección sobre su salud física y mental, y de su propiedad contra amenazas, maltrato y/o hostigamiento por parte de cualquier persona natural o jurídica.

De otra parte y según pormenorizado precedentemente, quien invoca su derecho a la intimidad debe demostrar que alberga una expectativa a su intimidad y que la sociedad así lo reconoce. En este caso, dado a la presunción de capacidad de la que goza la peticionaria, resulta forzoso concluir que en este pleito debe prevalecer su pleno derecho a decidir o rechazar la intervención con su cuerpo y de la manera en que se divulga su información médica. Así también lo concluye la Procuradora de Asuntos de Familia. En ese sentido, no se le puede obligar al examen médico, así como a permitir el acceso a sus expedientes médicos mientras no esté de acuerdo, pues constituye una invasión a su intimidad, derecho levantado conscientemente. Así, en el caso de marras, a la señora Objio Lara, aun cuando se trate de una adulta mayor, al momento se presume capaz, por lo que es merecedora de albergar una expectativa real de que su intimidad se respete. En esa misma línea,

es razonable pensar que la sociedad considera el hecho de tener tal expectativa de intimidad.

En vista de los fundamentos discutidos, corresponde concluir que el TPI erró en su determinación al ordenar las medidas cautelares e invasivas sobre la peticionaria de epígrafe.

**V.**

Por los fundamentos pormenorizados, se expide el auto de *Certiorari* y se revoca la *Resolución y orden* recurrida en lo que respecta a la Orden de medidas cautelares para la evaluación física y el acceso a los expedientes médicos de la señora Objio Lara por la señora Lugo Objio. Se devuelve el caso al TPI para que proceda conforme a lo aquí dispuesto.

En vista de lo resuelto, se deja sin efecto la orden de paralización de los procedimientos, previamente decretada.

A tenor con lo dispuesto en la Regla 35(A)(1) del Reglamento del Tribunal de Apelaciones, según enmendada, ***In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 42, pág. 55, 215 DPR __ (2025), el TPI puede continuar con los procedimientos sin que tenga que esperar por nuestro mandato.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones